## H. W. ELLIS v. LAKE SHORE ETC. R. CO.

*APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.*

Argued October 14, 1890—Decided January 5, 1891.

[To be reported.]

1. Where there is evidence that a railroad crossing was dangerous and was approached by a train at a very high rate of speed, it was not error to refuse to charge that the company performed its whole duty, in connection with the approach of the train to the crossing, if the whistle was sounded and the bell rung at a proper distance therefrom.

2. Negligence being the absence of care according to the circumstances, it must be measured by the apparent danger; the character of such a crossing necessarily affects the duties of the railroad company toward travelers upon the public highway, and its trains must pass over dangerous crossings at a less rate of speed, proportionate to the danger.

3. It is not incumbent upon a traveler, about to cross a railroad track at a public crossing, to alight from his vehicle and go upon the track, before attempting to cross, when he can get a view of the crossing without alighting; and whether, in a given case, he has stopped to look and listen at the best place, is necessarily a question of fact for the jury.

4. In an action against a railroad company for negligence in the management of a train, it is proper, in the charge, to call attention to the fact that the engineer and fireman of the train, in testifying for the defendant, were interested witnesses in one sense; at least, if attention is likewise called to the interest of the plaintiff and his witnesses.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 131 October Term 1890, Sup. Ct.; court below, No. 185 January Term 1890, C. P.

On December 24, 1889, H. W. Ellis brought trespass against the Lake Shore & Michigan Southern Railroad Company, operating the Jamestown & Franklin railroad, for personal injuries to the plaintiff alleged to be the consequence of negligence on the part of the defendant company. The defendant's plea was not guilty.

At the trial on June 12, 1890, the following facts were shown: On the afternoon of December 21, 1889, about half

past three o'clock, the plaintiff was driving a team of horses with an empty wagon, along a public road in the outskirts of the borough of Stoneboro in Mercer county. His son Clinton, aged about seventeen years, was in advance on foot, driving a yoke of oxen. Another son, Frederick, between twelve and thirteen years of age, was in the wagon with the plaintiff.

The public road referred to was crossed by the New Castle & Franklin and the Jamestown & Franklin railroads, the latter of which was operated by the defendant company. These two railroads were about two hundred feet apart, but the distance, by way of the public road, between their respective intersections therewith, was about three hundred feet. The point where the public highway crossed the defendant's railroad was within the corporate limits of the borough of Stoneboro, but was outside of the built-up portion thereof, and was a little over a mile west of the passenger station of the defendant company in the town. From 400 to 500 feet west of that crossing, another public road crossed the defendant's railroad. There was a road crossing, also, to the east of that first mentioned, but how far away from it did not clearly appear.

While driving across the defendant's track, the plaintiff's wagon was struck by a special train, running west, which consisted of a locomotive, tender and one passenger coach, and severe, probably permanent injuries were inflicted upon the person of the plaintiff thereby. Testifying on his own behalf, the plaintiff narrated the circumstances as follows :

" Before I crossed either the New Castle & Franklin or Lake Shore & Michigan Southern railroad I stopped on a bridge from which I had full view of both roads, and listened and looked for trains. This was my custom. . . . . After we crossed the New Castle & Franklin railroad, I proceeded on to cross the Jamestown & Franklin railroad, or Lake Shore railroad. As I drove along there I was standing up back of the seat. As I drove across between the New Castle & Franklin and Lake Shore railroads I think I had full view of the Lake Shore road toward Stoneboro the most of the distance. I neither heard nor saw any train on the Lake Shore road; everything was perfectly still. Before I undertook to cross the Lake Shore road, I stopped and looked and listened for trains on it, because

there was considerable timber piled up about there. At the point where I stopped, I think it was about two rods from the Lake Shore road; it might have been a little more or less. At that time I neither heard nor saw any trains on the road. I did not see nor hear any. I first heard and saw a train after I drove upon the track, and I did not hear it then, as it was running very still. It was not more than a second from the time I saw it until I was struck, and I did not know anything for some time after that. I had no notice nor warning before I was struck, that the train was coming. . . . . After I stopped between the two railroads and started on, I drove toward and onto the Lake Shore track on a walk, a slow walk. I think there were some timbers along down the track on the south side of the track. I could not be positive whether I could see down the track on account of the timber, or not. There were no houses in the neighborhood except O'Neal's and that is near the track. . . . . Where I stopped first, before I crossed the New Castle & Franklin railroad, I had a full view of the Lake Shore road down toward Stoneboro. I neither saw nor heard any trains coming on either roads."

The plaintiff was corroborated by the testimony of his two sons. Witnesses for the defendant testified that the sons, soon after the accident, made declarations to the effect that their father attempted to drive across the track with knowledge that the train was approaching, having been warned thereof by Clinton. The sons, testifying upon the trial, denied the making of such declarations.

The testimony was conflicting as to whether, at the place where the plaintiff stopped between the two railroads, an unobstructed view of the defendant's track to the east could be had, that of the plaintiff tending to show that while the view was obstructed to some extent by piles of lumber placed along the track, a person standing up in a wagon would be able to see an approaching train; and the testimony of the defendant tending to show that the obstructions would prevent a person from seeing a train far enough away to receive in this manner proper warning of its approach. The plaintiff's testimony tended to show that the train in question was running at an unusually rapid rate, so as to attract on this account the attention of several persons who observed it; one of the plaint-

iff's witnesses fixing the rate at which it was going, in his opinion, at forty-five miles per hour, and another giving data from which it could be inferred that the rate was about sixty miles an hour; while the testimony for the defendant tended to show that the train was running, just before the plaintiff drove upon the track, at the rate of but twenty to twenty-five miles an hour; that by promptly applying the air brakes, reversing the engine and sanding the rails, its speed was reduced to about eighteen miles per hour when it struck the plaintiff, and that the accident occurred just five minutes after the train left the station at Stoneboro. Witnesses for the plaintiff testified to the effect that no signal of the approach of the train to this crossing was given, until after the plaintiff's team was upon the track, when the stock alarm, consisting of a succession of short quick blasts of the whistle, was sounded. Witnesses for the defendant testified that the usual crossing signals were given at the regular place. By testimony for the plaintiff, it was shown that the crossing in question was a very dangerous one. It appeared, further, that the plaintiff was acquainted with its character, as he lived only a half a mile north of it, and had often passed over it.

At the close of the testimony, the court, MEHARD, P. J., charged the jury in part as follows:

It is the duty, then, of any one who approaches a railroad crossing to stop and look and listen, in order to determine whether or not there be a train. This stop, this investigation, must be made at a point which will give information upon that subject; and, if one approaching a railroad crossing fails to stop and look and listen and properly investigate the question whether or not there be a train approaching, that one is guilty of negligence; and if he go upon the railroad track and an accident occur, resulting in injury to him, he cannot recover for it, even though that accident be brought about in part by the negligence of the railroad company itself. It is essential, then, to a plaintiff who seeks to recover in a case of this kind that his case does not disclose negligence upon his part, because if there is any degree of negligence upon the part of the plaintiff that is an absolute barrier to his recovery, even though he make out the clearest case of negligence on the part of the railroad company.

Charge of Court below.

But, if the plaintiff establishes the fact that there is negligence upon the part of the railroad company; that this negligence was the direct cause of damage to himself, and the case does not show that the plaintiff himself was negligent, in any degree contributing to the injury, then the plaintiff is entitled to recover for whatever injury he sustained because of the negligence of the defendant. Therefore, gentlemen of the jury, we say to you in this case, that if the evidence discloses that the plaintiff has been guilty of negligence in the occurrence which is the subject of this suit, contributing in any degree to the injury of which he complains, he cannot recover here. But, if the evidence does not so show, and it does affirmatively appear by the weight of the evidence, that the defendant company was guilty of negligence at that occurrence, and that negligence resulted in damage to the plaintiff, he is entitled to compensation for whatever damage he thus sustained. This is the general law as to the rights and duties and liabilities of those using a road crossing and railroad, and of a railroad approaching a road crossing.

Now, while the law requires of one approaching a railroad crossing the use of due care to find out whether or not a train is approaching, so as to avoid a collision with the railroad train, it also requires of the railroad company that it shall likewise use due diligence in approaching the crossing of the highway. Both those using the highway as well as those using the railroad have rights, and these rights must be regarded by each with respect to the other. It is the duty of a railroad company, as the train approaches the crossing of a highway, to give proper warning of that approach. In thickly populated districts the duty goes to the extent of requiring the railroad company to put flagmen in the way, or even gates, for the purpose of preventing crossing while the train is in that vicinity. But in districts which are not thickly populated, that is not required of railroads, but then they are required to give proper warning by such signals as they can make, so as to notify persons approaching the railroad crossing of the approach of the train and thereby prevent collision. These remarks apply to crossings generally. . . . .

[Now, you are to inquire what was the character of this crossing. What was its situation? What were its surround-

Charge of Court below.

ings? Because, the duties of the parties, plaintiff and defendant, are measured in a degree by that situation, by those circumstances. The plaintiff, upon his part, would be required to use greater care in approaching a crossing where the view was obstructed, than he would be required to use where the view was not obstructed. The defendant, upon its part, would likewise be required to use greater care in approaching such a crossing, than approaching one where the view was plain for a great distance. That is to say, if the view along this road was obstructed in a degree, that obstruction would be a circumstance which ought to be present in the mind of both plaintiff and defendant as determining how much more care they would take than if they could both see up and down the track and through the surrounding country without obstruction.] [2] . . . .

Now, you are to say whether the plaintiff exercised such care and diligence in crossing that railroad track as the circumstances and surroundings of that crossing required of him as a man of prudence. If he did not, then if that negligence contributed in any degree to his injury, he cannot recover in this case, notwithstanding the fact that he did stop and look and listen. But if you are satisfied that the plaintiff did use due care and diligence making that crossing, used such care as a man of ordinary prudence would use under those circumstances, and that he did stop and look and listen at the point where he crossed, then he would not be prevented from recovering in this case on the ground of negligence, and you would further inquire whether or not the defendant has been guilty of negligence which was the cause of the plaintiff's injury.

[Now, as I have said, the defendant must have regard to the particular circumstances and situation of that particular crossing as well as the plaintiff. The defendant should also have regard to the proximity of other road crossings to that crossing, if there were other road crossings in that vicinity. The defendant should also have regard to the rate of speed at which such a train was moving, and also to the fact that this was not a regular train, but a special train, which is a conceded fact in this case. The degree of care which the law requires of the defendant corresponds to the surroundings of the crossing and to all the circumstances of the case, and it would require of

the defendant to give warning by signals, whistling and ringing the bell long enough to give a proper warning of the train's approach. The amount of warning and the amount of care which is required of the defendant in this case corresponds and is proportionate to the danger of the crossing, as well as the speed at which the train was moving and the proximity of other crossings, and the fact that it was a special train.] [2] . . . .

It is alleged in this case, that the defendant was negligent by failing to signal, either by whistling or ringing the bell, or both, as this train approached this crossing; and, second, that this train was approaching this crossing at such an extraordinary rate of speed that, even if they did whistle or ring the bell, nevertheless it was negligent to approach this crossing at that rate of speed, and that this accident is the result of the combined acts; that is, the failing to whistle and ring and also of the high rate of speed at which this train was moving. . . . .

[Now, gentlemen of the jury, you are to take the testimony of the witnesses upon the part of the plaintiff and the witnesses on the part of the defendant, and you are to say from that evidence what was the rate of speed at which that train was moving.] [2] On the part of the defendant, it is alleged and claimed that the evidence shows that this train was not passing at the rate of more than twenty to twenty-five miles an hour at any point between Stoneboro and the place of accident. [On the part of the plaintiff it is claimed that the evidence shows that this train was passing at from the rate of from forty-five to sixty miles an hour. You are to take the evidence in this case, I say, upon the part of the plaintiff and upon the part of the defendant, and you are to say what is the truth. Is it true that this train was passing at an extraordinary rate of speed, of from forty-five to sixty miles an hour; or, is it true that it was passing only at the moderate rate of speed of from twenty to twenty-five miles an hour, for that is an important question in this case?] [2] Did the defendant blow the whistle and ring the bell at a proper distance and for a long enough time to give warning to Ellis at this crossing of the approach of this special train, regard being had to the rate of speed at which the train was approaching the crossing? . . . . .

[Now, if the plaintiff used proper care in approaching this crossing, and if, on the other hand, the defendant's train ap-

proached this crossing without whistling or ringing the bell and at an unusually high rate of speed, you will say whether or not that was such care as the defendant should have exercised in approaching a crossing of this kind. If it was not, then your verdict will be in favor of the plaintiff. If the defendant did ring the bell and did blow the whistle, but was approaching this crossing at a high rate of speed, at an extraordinary rate of speed, if that rate of speed was from forty-five to sixty miles an hour, as it is claimed on the part of the plaintiff, then you will say whether or not it was negligence on the part of the defendant to approach this crossing at such a rate of speed, having regard to the situation and the surroundings of that particular crossing. If you find that the train did approach this crossing at such an extraordinary high rate of speed, and you are further satisfied that it was negligence and the want of due care to approach this particular crossing at such rate of speed, and further find that the accident to this plaintiff was the result of such negligence, then you would find in favor of the plaintiff.]² But, on the other hand, if you find that defendant was not guilty or negligent in this matter, your verdict would be, of course, in favor of the defendant.

You must also consider the amount of credibility which each of the witnesses is entitled to. You are to have regard to their fairness and frankness, or the lack of such fairness and frankness upon the witness stand as they appeared before you. You must have regard to their interest in the result of this case, or to the bias they may have, if any such was shown to you, when upon the witness stand. The plaintiff in this case is, of course, an interested witness. It is a matter of moment to him. It is a matter of pecuniary interest to him. You are to say whether or not the plaintiff, notwithstanding that pecuniary interest, has told you a frank, and plain, and truthful story. The plaintiff's sons have no direct pecuniary interest in this suit, but they are the plaintiff's sons, and from that we may naturally suppose that they have a bias in this case; that is, a partisan interest in favor of their father. That weighs against their credibility. You will not understand me to say it destroys it. You are to consider that fact in weighing their evidence, and say whether, notwithstanding such interest or bias, they have resisted any such temptation to tell what is not true and

have told you a plain and truthful story. The other witnesses upon the part of the plaintiff have not disclosed any interest in this case, unless you have discovered upon the part of any of them a partisan interest. They have no direct pecuniary interest in the case.

[On the part of the defendant, it is in evidence that William Parker and John M. Woodburn were the engineer and fireman on this train. They have an interest in this case, for if there was negligence in this matter it was their negligence; and, while they are not hurt by the verdict in this case, nevertheless they have a responsibility that weighs against their credibility, and to what extent it is for you to say, in view of all their testimony as it has been shown. The other witnesses who were called upon the part of the defendant are the employees of the defendant company. Whether or not that fact has influenced them in favor of the defendant and against the plaintiff, whether or not they have resisted any partisan interest which you may think would grow out of such relationship, and have told to you the plain and frank truth in this case, is for you, gentlemen of the jury, to determine. You are to judge, and you only are the judges of the credibility of these witnesses, and you are not to be forgetful of the fact that you are to weigh their credibility in determining the value of their testimony.] [2] . . . . .

The defendant in this case has submitted certain points for instruction:

1. If the jury find from the evidence in this case that the engineer of the defendant company sounded the whistle at a proper distance, and rang the bell as they approached the road crossing, then the defendants have done their whole duty, and are guilty of no negligence, and there can be no recovery in this case.

Answer: We cannot say to you as a matter of law that the whole duty of the defendant was discharged if the whistle was blown on this train and the bell rung as this train approached the crossing where the accident occurred. There is evidence that this train was running at an extraordinary rate of speed; it is claimed as fast as from forty-five to sixty miles an hour. It is also in evidence that there was another crossing a short distance west of the one where the accident occurred and another

### Charge of Court below.

somewhat further distant east of this.   We therefore submit it to you to say whether this train was moving at the high rate of speed claimed by the plaintiff, and if so, whether that was a negligent rate of speed, and whether the injury to the plaintiff was the natural result of such negligent rate of speed after the plaintiff had exercised all due care on his own part; if so, you should find in favor of the plaintiff.   But otherwise, if the whistle was blown and the bell was rung, you should find for the defendant.   But if you find that the whistle was so blown and the bell so rung, you would inquire whether that is reconcilable with the theory that the plaintiff did stop and look and listen at the proper place as he approached this crossing.[1]

2. If the jury find that there were obstructions in the way which prevented the plaintiff from seeing down the track as he approached the same, and from the point where he testifies he stopped, then it was his duty as a prudent man not only to look and listen, but also to get out of his wagon and go upon the track and look for approaching trains, and if necessary, to lead his horses across.   Anything short of this would be contributory negligence on his part, and there could be no recovery in this case.

Answer: The evidence on the part of the plaintiff tends to show that the plaintiff had a good view of this road from his wagon up and down at the point where he first stopped, and between that and the point where the next stop was made, as well as at the point where he stopped the last time.   We are not warranted in affirming this second proposition of law.   We refuse it; leaving it to the jury to say whether the plaintiff did stop and look and listen at a place where he could see up and down the track, and whether he used such care and diligence in approaching that crossing as ought to be used by a man of ordinary care and prudence.[1]

3. It is not negligence for a railroad company to run its trains over a public crossing in the country at the rate of thirty miles an hour.   The law fixes no rate at which they should run except in towns and thickly populated places.   And this is a question entirely for the court and not to be submitted to the jury.

Answer: This we affirm as a proposition of law; but in af-

Charge of Court below.

firming it we call your attention to the answer which was made to the first point in this case.   While the law does not fix any rate of speed, particularly, at which a train may pass along defendant's track, it does require that those in charge of the train shall use proper care and diligence, according to the circumstances, as they approach any crossing.   The amount of care which they are to use is proportionate to the particular circumstances of a particular crossing.   Thus explained this point is substantially affirmed.[1]

The counsel call my attention to the fact that I stated to you that the witnessess on the part of the plaintiff testified that this train was moving at the rate of from forty-five to sixty miles an hour.   I did not intend to state to you that the witnessess so testified in terms.   Mr. McFarland testified that he estimated the rate at which this train was moving to be forty-five miles an hour when he saw it.   But I say that the plaintiff claims, from all the evidence in the case on his part, touching the rate of speed at which the train was moving, that the evidence shows that it was moving from forty-five to sixty miles an hour.   It is for you to say whether this claim is supported by the data of the plaintiff's case, whether that be the truth in view of all the evidence in the case both for the plaintiff and the defendant.

The jury returned a verdict in favor of the plaintiff for $7,900, and upon an inquiry from the court they found specially "that no signal was given until just before the accident, when the stock alarm was given."   This special finding was thereupon embodied in the verdict as recorded.

The defendant moved for a new trial for reasons in substance as follows:  (a) that the court committed certain errors in the charge to the jury;  (b) that the verdict was excessive and unwarranted by the evidence;  and (c) that the court erred "in taking from the jury, orally, the evidence upon which they found their verdict," and (d) that the verdict should have been recorded as originally rendered.

By the court:  Motion refused.[3]

Judgment having been entered, the defendant took this appeal, assigning for error:

Arguments.

1. The answers to the defendant's points.[1*]
2. The parts of the charge embraced in [ ] [2*]
3. The refusal of the defendant's motion.[3]

*Mr. S. R. Mason* (with him *Mr. George G. Green* and *Mr. O. G. Getzen Danner*), for the appellant:

1. We conceded upon the trial that the fact of the plaintiff's stopping, looking and listening before attempting to cross the track, was proved and was not contradicted. Yet the court magnified it to the jury, and left the impression on their minds, by inference, that a reciprocal duty to stop the train, before reaching a dangerous crossing, rested on the defendant. This was the tendency of the charge. Our points should have had direct answers. The first point did not ask the court to say that the fact of sounding the alarm whistle was proved, but simply to declare the law, unqualifiedly, upon the point as put. The second point was simply a statement of the law as declared by this and every other court in the union, before which the question has been raised: Penna. R. Co. v. Beale, 73 Pa. 504; Schoefert v. Railway Co., 62 Iowa 624; Harris v. Railroad Co., 41 Iowa 227; Benton v. Railroad Co., 42 Iowa 142; Haas v. Railroad Co., 47 Mich. 407; Chaffee v. Railroad, 104 Mass. 108; Lake Shore R. Co. v. Hart, 87 Ill. 529; Lake Shore R. Co. v. Miller, 25 Mich. 274; Central R. Co. v. Feller, 84 Pa. 226.

2. Upon the testimony of the plaintiff, three distinct facts were proved, which were undisputed; (*a*) that this crossing was a place of known danger; (*b*) that it was well known as such to the plaintiff; and (*c*) that he attempted to cross the track without knowing whether a train was approaching or not, and without even taking the pains to know whether or not he could see down the track himself when he last stopped. Upon these facts, the court should have instructed the jury that there could be no recovery in the case. The answer to the defendant's third point was vague and uncertain, and not responsive to the point as put. We are unable to see what

---

* T is a little dangerous to assign error in several portions of a charge, or the answers to several points, by a single specification. Better not. Rule XXII.

Arguments.

bearing the proximity of other crossings had upon the case or upon the point. And there is no law regulating the speed of trains, except in thickly populated places, under municipal regulations ; if there was, it would form no excuse for want of proper care upon the part of the person injured at a crossing : Michigan C. R. Co. v. Campau, 35 Mich. 469 ; Grand Rapids R. Co. v. Huntley, 38 Mich. 537 (31 Am. Rep. 321) ; Pzola v. Railroad Co., 54 Mich. 273 ; Chicago R. Co. v. Jacobs, 63 Ill. 179 ; Chicago R. Co. v. Lee, 68 Ill. 582 ; Grove v. Railroad Co., 67 Me. 100 ; McKonkey v. Corning, 40 Iowa 205 ; Schofield v. Railway Co., 8 Fed. R. 488 ; Reading R. Co. v. Ritchie, 102 Pa. 425.

3. Conceding, for the sake of the argument, that this was a special train running at a high rate of speed, and that no warning of its approach was given ; still there could be no recovery if the plaintiff was guilty of contributory negligence : Schofield v. Railway Co., 114 U. S. 615 ; Cleveland Ry. Co. v. Elliott, 28 Ohio 340 (14 Am. Ry. Rep. 124) ; Penna. R. Co. v. Righter, 42 N. J. 180 ; Haas v. Railroad Co., 47 Mich. 407 ; Williams v. Railroad Co., 64 Wis. 1. But the defendant cannot be held to a stricter account in running a special train than in the case of any other. The same uniform rule must apply to the running of all trains. The judge was in error in giving force to the fact that this was a special train, and demanding special care from the company. Then he coupled with this, in such a way as to give it with the jury the force of a fact proved, the statement that the train was running at the rate of from forty to sixty miles an hour, whereas there is no evidence to support it. And the general tenor of the charge was misleading. The comments upon the credibility of the engineer and fireman, who were entirely disinterested, could have no other effect upon the average juror than to prejudice his mind against the witnesses and the defendant's case.

*Mr. S. H. Miller* (with him *Mr. Q. A. Gordon* and *Mr. James A. Stranahan*), for the appellee :

The plaintiff asked for no specific instructions upon the matter of speed, disconnected from the more important question as to whether any signal was given of the approach of the train. The defendant, however, boldly asked the court, in its second

Opinion of the Court.

point, to say, in effect, that no attainable speed in approaching the crossing would constitute negligence. This proposition is not sustained by the decisions cited in support of it. On the contrary, the facts and circumstances of each particular case must govern the question of speed: Reeves v. Railroad Co., 30 Pa. 454; Reading R. Co. v. Ritchie, 102 Pa. 425; Penna. R. Co. v. Ogier, 35 Pa. 60; Lehigh V. R. Co. v. Brandtmaier, 113 Pa. 610. While, if the plaintiff had entirely neglected to stop, look and listen, the court could declare the omission to be negligence, as matter of law, yet, as it was shown and conceded that this duty was performed by him, the questions whether in view of all the circumstances it was sufficiently performed, and whether there was anything more incumbent upon him, were to be passed on by the jury: Arnold v. Railroad Co., 115 Pa. 135; Penna. R. Co. v. Garvey, 108 Pa. 369; Lake Shore Ry. Co. v. Frantz, 127 Pa. 297; McNeal v. Railroad Co., 131 Pa. 184; Penna. R. Co. v. Ogier, 35 Pa. 60; Penna. R. Co. v. Ackerman, 74 Pa. 265. This court has never yet held that a traveler is bound, as a matter of law, to get out of his conveyance and go upon the track to look for trains. Penna. R. Co. v. Beale, 73 Pa. 504, and Central R. Co. v. Feller, 84 Pa. 226, were not ruled on any such principle.

OPINION, MR. CHIEF JUSTICE PAXSON:

We do not think it was error to decline to affirm the defendant's first point. The vice of the point is that it assumed that the railroad company had performed its whole duty, provided the whistle was sounded and the bell rung at a proper distance from the crossing. But there was another element in the case which the jury were necessarily compelled to pass upon, viz., the rate of speed at which the train approached the crossing. The character of the crossing itself was a circumstance which could not be ignored, and which necessarily affected the relative duties of both the plaintiff and the company. If it was a dangerous crossing, as was practically admitted on both sides, it was the duty of the plaintiff to exercise the more care in approaching it. At the same time, it was equally the duty of the defendant company to see that their trains passed it at a reasonable rate of speed, proportioned to the danger. In other words, negligence is the absence of care according to the cir-

cumstances, and must be measured by the apparent danger. While a high rate of speed is allowable, and perhaps necessary, in rural districts, the same rate of speed might be attended with peril to life in more thickly populated sections, and at dangerous crossings.

By the defendant's second point the learned judge was asked to instruct the jury that if they "find that there were obstructions in the way which prevented the plaintiff from seeing down the track as he approached the same, and from the point where he testifies he stopped, then it was his duty as a prudent man not only to look and listen, but also to get out of his wagon and go upon the track and look for approaching trains, and if necessary to lead his horses across. Anything short of this would be contributory negligence on his part, and there could be no recovery in this case."

The learned judge answered this point as follows:

"The evidence on the part of the plaintiff tends to show that the plaintiff had a good view of this road from his wagon up and down at the point where he first stopped, and between that and the point where the next stop was made, as well as at the point where he stopped the last time. We are not warranted in affirming this second proposition of law. We refuse it; leaving it to the jury to say whether the plaintiff did stop and look and listen at a place where he could see up and down the track, and whether he used due care and diligence in approaching that crossing as ought to be used by a man of ordinary care and prudence."

The above point was evidently based upon Penna. R. Co. v. Beale, 73 Pa. 504, where the rule is laid down that it is the duty of a traveler when about to cross a railroad, if he cannot see the track, to stop, look, and listen, and, if necessary, to get out and lead his horse. This principle is there stated to be an unbending rule, and its neglect to be negligence per se. We have enforced this principle in a number of later cases which it is not necessary to cite.

The difference between the case cited and the one in hand is this: In the former, the person injured did not stop; while, in the latter, the plaintiff stopped twice, and both looked and listened. It appears that the road which the plaintiff was traveling crosses two railroads about three hundred feet apart.

The plaintiff testified that before he crossed the first road, the
New Castle & Franklin, he stopped on a bridge from where he
had a full view of both roads, and listened and looked for
trains. He further said: "After we crossed the New Castle
& Franklin railroad, I proceeded to cross the Jamestown &
Franklin, or Lake Shore railroad, (defendant company's road.)
As I drove along there I was standing up back of the seat.
As I drove across between the New Castle & Franklin and
Lake Shore railroads, I think I had full view of the Lake
Shore road towards Stoneboro, the most of the distance. I
neither heard nor saw any train on the Lake Shore road;
everything was perfectly still. Before I undertook to cross.
the Lake Shore road, I stopped, and looked and listened for
trains on it, because there was considerable lumber piled up on
it. At the point where I stopped, I think it was about two
rods from the Lake Shore road; it might have been a little
more or less. At that time I neither saw nor heard any trains
on the road."

It will thus be seen that the plaintiff so far complied with
the rule laid down in Penna. R. Co. v. Beale, as to stop, look,
and listen twice before he attempted to cross defendant's road.
Did he stop at the right place, and was it his duty to go up on
the track? The latter can only be necessary when he can get
a view of it in no other way, which does not appear to have
been the case in this instance. The first branch of the inquiry
was for the jury, and it would have been error in the learned
judge to have ruled it as a question of law. In Lake Shore
R. Co. v. Frantz, 127 Pa. 297, the plaintiff was injured by the
collision of his wagon and a hand-car at a public crossing. It
was partially obstructed by standing cars. The defendant
moved for a compulsory nonsuit on the ground of contributory
negligence, alleging that it was the duty of the plaintiff to
stop, look, and listen at a point where he could see the main
tracks of defendant's railroad. The court below refused to
grant a nonsuit, and also refused to charge that the plaintiff
was guilty of contributory negligence. Upon appeal to this
court it was said by Mr. Justice MITCHELL: "A nonsuit could
only be granted on the ground of manifest contributory negli-
gence of the plaintiff. This we do not find. There were a
number of tracks, and the evidence is strong that the plaintiff

stopped, looked, and listened before crossing the first. It might still have been his duty to stop again before going upon the track of the defendant company on which the collision took place, but the evidence does not enable us to say so as a matter of law. It is far from clear that the place where plaintiff stopped was not the best, or that there was any safe place for a second and better view. It was proper, therefore, that the case should be left to the jury, and the nonsuit was rightly refused." In McNeal v. Railway Co., 131 Pa. 184, the plaintiff stopped within fifty feet of the track, and it was presumed he looked and listened, and it was left to the jury to say whether he had exercised due care. Penna. R. Co. v. Beale does not appear to have been referred to in that case. While the rule to stop, look, and listen is an invaluable one, and may be properly declared by the court as a matter of law, yet the question whether a traveler in a given case has stopped at the best place, is necessarily a question of fact, not of law. If I am right in this, it must, as a general rule, be passed upon by a jury.

We find no error in the qualification which the learned judge gave to the defendant's third point. The rate of speed of a railroad train at a public grade crossing has been sufficiently referred to in the remarks upon the first assignment of error. A considerable portion of the charge of the court below is also assigned as error. We cannot say that the reference to the speed of the train was wrong. On the contrary, the charge in this respect was entirely fair. It is true he said to the jury: " If that rate of speed was from forty-five to sixty miles an hour, as it is claimed on the part of the plaintiff," etc. Here, the learned judge only stated what the plaintiff claimed as the rate of speed, and while no witness stated in terms, if I am correct in my examination of the testimony, that the train was running at the rate of sixty miles an hour, yet there was evidence from which the jury might have found the fact inferentially. On the other hand, the learned judge fairly stated what the defendant claimed as to speed. The testimony upon this point, as is usual in such cases, was vague and unsatisfactory.

Complaint was also made that the learned judge called attention to the fact that the engineer and fireman of the train

Syllabus.

were interested witnesses in one sense, although not affected by the verdict pecuniarily. What the learned judge said upon this point was entirely true, and it was proper to call the attention of the jury to it. There might have been a good ground of objection, had the learned judge referred only to these two witnesses. But he pointedly called the attention of the jury to the interest of the plaintiff and his two sons, and told them that it affected their credibility. The reference in each case was proper.

We need not notice the last assignment.*

Judgment affirmed.

---

* " Let us have peace : " McKenney v. Fawcett, ante, 344.