[No. 32981. Department Two. June 23, 1955.]

O. H. SANDBERG, *Appellant*, v. TED SPOELSTRA *et al.*, *Respondents and Cross-appellants.*[1]

[1]Reported in 285 P. (2d) 564.

*Joseph H. Johnston*, for appellant.

*Howard V. Doherty*, for respondents and cross-appellants.

Hill, J.—The driver of plaintiff's loaded logging truck and trailer, traveling east between Forks and Port Angeles, made a left turn off the highway in order to park at the Lake Sutherland store while he had coffee and discussed with another of plaintiff's drivers a possible emergency with reference to the condition of the latter's load. The surfaced part of the highway at that point was nineteen feet and nine inches wide and was divided into east and west bound traffic lanes by a center stripe. Some 375 feet east of where the truck and trailer were parked there was a curve in the road which cut off the view beyond.

Upon returning to the highway, plaintiff's truck became involved in a collision with a westbound logging truck loaded with its own trailer, belonging to the defendants. Coming around the curve in the westbound lane, the defendants' driver saw the plaintiff's "rig" and applied his brakes; his truck skidded down the highway and nosed into a bank alongside the road; the truck body swung crosswise of the road and hit the bumper and radiator of the plaintiff's truck. At the point and time of impact the plaintiff's truck was entirely in its right, or the eastbound, lane of the highway, but it will be assumed that the trailer or a portion of it was approximately a foot and a half on the wrong side of the center line.

Both vehicles sustained substantial damage. The plaintiff sought recovery against the defendants, who cross-complained. The trial court concluded that both drivers had been negligent and that the negligence of each was a proximate cause of the collision; hence neither party was entitled to recover from the other. Judgment was entered dismissing the complaint and cross-complaint. Plaintiff appealed and the defendants cross-appealed. Because of the cross-appeal, we shall continue to refer to the parties as plaintiff and defendants.

The principal issue on this appeal is whether the negligence of the plaintiff's driver was a proximate cause of the collision. Before taking up that issue, we would dispose of one ground of negligence urged by the defendants and apparently relied upon to some extent by the trial court. We are satisfied that the driver of the plaintiff's truck was not negligent in making a left turn off the highway for the purpose of parking at the Lake Sutherland store. Whether he was required to do so by an emergency, is entirely immaterial. The statute relied upon by the defendants is RCW 46.60.010 [*cf.* Rem. Rev. Stat., Vol. 7A, § 6360-75], which requires drivers to "at all times drive . . . to the right of the center of such highway," except when overtaking and passing, or avoiding obstructions. This statute does not prohibit a left turn for the purpose of leaving the highway at an intersection or any other place. We have found no cases in which it is even suggested that such a statute is applicable to left turns from the highway; to the contrary, the right of a driver to make a left turn at a point other than an intersection was recognized in *Onkels v. Stogsdill* (1929), 151 Wash. 194, 275 Pac. 692. In that case, a judgment for damages in favor of the driver who made such a turn was affirmed.

However, we held in the *Onkels* case—and adhered to the rule in *Glick v. Ropes* (1943), 18 Wn. (2d) 260, 138 P. (2d) 858—that one who undertakes such a turn for the purpose of leaving the highway must exercise extraordinary care and caution for the preservation of his safety and to

avoid injury to others traveling upon the highway. Failure to exercise such care was not shown in the present case. The negligence of the plaintiff's driver is to be judged not by the manner in which he reached the parking place but by the way he left it and regained his place on the highway.

Plaintiff's driver had a right to take the truck and trailer back onto the highway from the parking place on the private driveway, but in leaving such parking place it was his duty: (1) to bring his vehicle to a full stop at a point where, before entering the highway, he could see traffic approaching from either direction; (2) to look in both directions and observe traffic conditions; (3) to yield the right of way to all vehicles upon the highway; and (4) to adopt such additional precautions as may have been necessary to assure a reasonable margin of safety under the existing circumstances. See RCW 46.60.190 [*cf.* Rem. Rev. Stat., Vol. 7A, § 6360-92]; *Cooney v. Tacoma Moving & Storage Co.* (1930), 155 Wash. 628, 285 Pac. 667; *Weaver v. McClintock-Trunkey Co.* (1941), 8 Wn. (2d) 154, 111 P. (2d) 570, 114 P. (2d) 1004; *Wheaton v. Stuck* (1949), 34 Wn. (2d) 725, 209 P. (2d) 377.

The testimony was widely divergent. Plaintiff's driver testified that the defendants' truck did not come into view until the plaintiff's truck was completely over the center line and in the eastbound lane. The defendants' driver testified that, when he rounded the curve and first saw the plaintiff's truck and trailer, it was 333 feet away and had not yet started across the highway. He testified that it was stopped but conceded that it might have been rolling slightly, and that almost immediately thereafter it "tried to beat me across the road"; whereupon he applied his brakes, with the results hereinbefore described.

We are handicapped in any review of the defendants' driver's testimony because we do not have the advantage, which the trial court had, of a drawing on a blackboard on which the witness illustrated his testimony by reference to points "a", "b", "c", "p", and "x". It may well be that the drawing marked "For Illustration Only" which appears in the respondents' (defendants') brief is an attempted

reproduction of the blackboard drawing, but we cannot so assume and the drawing is no part of the record before us.

The trial court found that the negligence in the operation of the plaintiff's truck and trailer was as follows:

"That the Plaintiff caused and contributed to said accident by having parked its loaded vehicle, 60 feet in length, in a parking area immediately ahead of a blind curve and under no conditions of emergency, knowing at the time of so parking that other vehicles would be coming toward it along the highway and knowing that it must block the highway for a substantial time upon its return to its easterly route and that other vehicles travelling westerly and approaching it and having the right-of-way, might be unable to avoid collision for want of timely warning because of the blind curve; and furthermore, that although another driver and agent of the plaintiff was present at said store and parking area at all times and available to have watched for oncoming traffic and signalled the driver, Lloyd Harris, when it was safe to cross and re-enter said highway, no precaution of observation of oncoming traffic was taken by the plaintiff or either driver or agent of the plaintiff although the exercise of any such precaution might have served to prevent said accident by giving the driver Harris notice of the defendants' oncoming vehicle or of other vehicles approaching around said blind curve."

Considered apart from the other findings, this would seem to indicate that it was the trial court's view that the parking place in front of the Lake Sutherland store was so close to the blind curve that a loaded truck and trailer sixty feet in length would block the westbound traffic lane for such a substantial period of time upon re-entering the highway to pursue an easterly course that other vehicles, traveling westerly around the curve, might be unable to avoid a collision for want of timely warning, and that it would be negligence to fail to use a flagman for the purposes indicated in the finding.

A vehicle traveling forty miles on hour (the truck limit) would travel 583 feet in ten seconds, and if traveling fifty miles an hour (the maximum permitted any vehicle) would travel 733 feet in the same time. Plaintiff's driver testified that he had reached a speed of five miles an hour when he stopped because he saw that the defendants' truck was

"in trouble." In all probability, he had not attained that speed when he started across the highway. At five miles an hour it would have taken almost ten seconds to clear the westbound traffic lane if he had gone directly across the road; obviously, he had to travel farther and take longer because he was proceeding at a forward angle across the westbound traffic lane. It is clear that he gambled that either no vehicle was approaching for a considerable distance beyond the curve 375 feet away or that, if one was coming, it could and would avoid a collision by stopping, slowing abruptly, or yielding him whatever portion of the westbound traffic lane he needed. However, in the instant case the trial court could have found that he won his gamble, inasmuch as his truck was entirely in the eastbound traffic lane when hit in front by the defendants' truck.

We can agree that plaintiff's driver was negligent in starting back onto the highway under the conditions there existing, but the question is that of proximate cause. Under the circumstances described, a cause of the collision was the position of the defendants' truck on the highway. The trial court found that the defendants' truck was in that position because their driver was operating the truck at a rate of speed in excess of what was safe considering the place and the circumstances, and that such negligence was a proximate cause of the collision.

However, the trial court, accepting the testimony of the defendants' driver which we have heretofore outlined, also made the following finding, from which there naturally follows a conclusion of contributory negligence on the part of plaintiff's driver:

"That as the defendants' vehicle approached said store and rounded said curve the plaintiff's vehicle crossed in front of the defendants' vehicle headed in an easterly direction; that the defendants' vehicle, upon seeing the crossing truck and trailer, attempted to stop."

If the plaintiff's driver's negligence, involving, among other things, a failure to yield the right of way, caused the defendants' driver to be placed in a position of peril and to lose control of his truck in an effort to extricate himself

therefrom, the trial court was justified in holding such negligence to be a proximate cause of the collision. *Watkins v. Interstate Coach Co.* (1927), 145 Wash. 221, 259 Pac. 393; *Zurfluh v. Lewis County* (1939) 199 Wash. 378, 91 P. (2d) 1002 (overruled on a different point in *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 131 P. (2d) 736).

■ While some members of this court are skeptical concerning the testimony upon which this finding is based, the trial court had the advantage not only of observing the witness but also of an explanatory illustration on a blackboard, and we are not in a position to say that the evidence preponderates against the finding; hence, on the plaintiff's appeal, we affirm the judgment of dismissal entered against him.

The basis of the defendants' cross-appeal is that their driver was confronted by an emergency created by the plaintiff's driver's attempt to cross in front of him.

It is apparent that, if the trial court's finding that the defendants' driver's speed constituted negligence under the circumstances then and there existing, is supported by the evidence—and we are satisfied that it is—the doctrine of sudden emergency cannot be invoked by the defendants in the present case, because the emergency was brought about, in part at least, by the negligence of their driver.

■ The emergency doctrine, stated concisely, is:

"When one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection." 1, part 2, Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 538, § 668 (quoted and adopted by this court in *American Products Co. v. Villwock* (1941), 7 Wn. (2d) 246, 256, 109 P. (2d) 570, 132 A. L. R. 1010).

It is equally well established that the doctrine cannot be invoked by one whose own negligence brought about, in whole or in part, the emergency with which he is confronted. *Anderson v. Davis* (1922), 151 Minn. 454, 187 N. W. 224 (citing supporting authority from nine other states); *Trudeau v. Sina Contracting Co.* (1954), 62 N. W.

(2d) (Minn.) 492; *Saeger v. Canton City Lines* (1946), 78 Ohio App. 211, 69 N. E. (2d) 533; *Casey v. Siciliano* (1933), 310 Pa. 238, 165 Atl. 1; *Kins v. Deere* (1948), 359 Pa. 106, 58 A. (2d) 335; 1, part 2, Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 547, § 669. In *Anderson v. Davis, supra* (p. 457), it is said:

"But this rule does not apply where a person's own negligence has put him in a position of danger. If he is in the place of danger as a result of his own negligence, he cannot invoke this rule to escape the consequences of such negligence. In order to bring him within the rule, the emergency which required him to act must not have been brought about, in whole or in part, by his own fault."

Or, as stated recently by the same court in *Trudeau v. Sina Contracting Co., supra* (p. 496):

"The so-called emergency rule is but a special application of the general standard of reasonable care. When given, it requires a jury to consider the fact of sudden peril as a circumstance in determining the reasonableness of a person's response thereto. The rule can only apply if it has first been determined that there existed a real peril and that the negligence of the party seeking to invoke it was not a contributing cause. Prosser, Torts, § 37; Restatement, Torts, § 296."

And in *Simonson v. Huff* (1923), 124 Wash. 549, 215 Pac. 49, we said that the rule of sudden emergency applies to those who are themselves without fault, not those who at the time are committing a wrong. See, also, *Barcott v. Standring* (1931), 163 Wash. 357, 1 P. (2d) 213; *Turnquist v. Rosaia Bros.* (1938), 196 Wash. 434, 83 P. (2d) 353; *American Products Co. v. Villwock* (1941), 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010; *Tackett v. Milburn* (1950), 36 Wn. (2d) 349, 218 P. (2d) 298.

The benefit of the emergency rule is applicable only to conduct *after* a person has been placed in a position of peril. It is not here contended that any act of the defendants' driver *after* he was in a position of peril constituted negligence. The trial court found, in effect, that his excessive speed under the circumstances was partially responsible for his position of peril which constituted the

emergency. It is that negligence which was a proximate cause of the collision and which bars any recovery by the defendants. See *Windsor v. McKee* (1929), 22 S. W. (2d) (Mo. App.) 65; *Oblamski v. St. Louis Public Service Co.* (1952), 251 S. W. (2d) (Mo. App.) 344; *Lewis v. Zagata* (1942), 350 Mo. 446, 166 S. W. (2d) 541. On the defendants' cross-appeal, the judgment dismissing their cross-complaint is affirmed.

Since the judgment is affirmed in its entirety, neither party having prevailed on appeal, no costs will be allowed except that, inasmuch as the statement of facts was necessary to both the appeal and the cross-appeal, the cross-appellants shall pay one half of that cost.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

August 4, 1955. Petition for rehearing denied.

