[No. 38313.   Department Two.   August 25, 1966.]

VIRGINIA TODD, *Respondent*, v. HARR, INC., *Appellant.**

*Rutherford, Kargianis & Shinn* and *Samuel C. Rutherford,* for appellant.

*Morell E. Sharp* and *James S. Turner,* for respondent.

FINLEY, J.—This is a lawsuit for personal injury damages, involving allegations of negligence respecting the mainte-nance of an apartment house stairway. The plaintiff-re-spondent, Virginia Todd, resided with her three daughters in a third-floor apartment in the Eulalie Apartments in Seattle which were being purchased and operated by the defendant-appellant, Harr, Inc. During the week preceding

*Reported in 417 P.2d 945.

September 12, 1962, Mr. Rogers, the president of the defendant corporation, partially installed a new carpet runner approximately halfway down the stairs used in common by the apartment tenants. The new runner was laid down directly over the old carpeting; thus, the height of the tread on the last newly carpeted stair (approximately halfway down the stairway) was the thickness of the new carpet higher than the preceding stairsteps. On the night of September 12, 1962, the plaintiff was using this common stairway to ascend to her apartment. Upon reaching the first step with the new carpeting, the plaintiff, Mrs. Todd, caught her heel and fell, allegedly sustaining severe back injuries.

This lawsuit was initiated against the defendant corporation on the theory that the plaintiff's fall was a result of the defendant's negligence in failing to maintain the stairway in a reasonably safe condition. The evidence introduced at the trial focused upon the alleged inadequacy of the lighting for the stairs and the improper installation of the carpeting thereon. The defendant's answer denied any negligence, and asserted by way of affirmative defense that the plaintiff's fall had been caused by her own negligence. The jury returned a verdict for the plaintiff in the amount of $12,500. Judgment was entered accordingly.

On appeal, four of the defendant corporation's assignments of error deal with alleged prejudicial misconduct of plaintiff and her counsel during the course of the trial, and the failure of the trial court to grant a mistrial and/or a new trial. The other two assignments of error concern an allegedly erroneous failure to give one of defendant's requested instructions.

The essence of defendant's argument on appeal seems to be that, even if any one of the alleged errors at trial is not sufficient to warrant a new trial, their cumulative effect was to deny the defendant a fair trial and unjustifiably to inflame the jury, as demonstrated by the unduly excessive verdict rendered. We are unable to agree with any of appellant's contentions.

Initially, the defendant assigns error to the failure

of the trial judge to grant the defendant's motion for mistrial after the following colloquy between the plaintiff and her counsel:

> Q. Did you see Mr. Rogers? A. [by Mrs. Todd.] I don't believe it was that day that I saw him. I don't believe he came over until the next day. I don't know, but he did, when I called him, he told me not to worry about it, *that he was covered with insurance.* (Italics ours.)

The appellant quotes, in part, from *Miller v. Staton*, 64 Wn.2d 837, 840, 394 P.2d 799 (1964), wherein we stated:

> the presence of this type of statement in the record will alone lead this court to an extremely careful evaluation of the total approach or·presentation to the jury, in terms of the fairness of the trial.

But, even after careful perusal of the entire record, we are not convinced that the plaintiff's admittedly unresponsive answer was a deliberate attempt on her part to inject the matter of defendant's liability insurance coverage into the trial. No review of the pertinent cases is necessary to substantiate the proposition that the fact that a personal injury defendant carries liability insurance is entirely immaterial, and the deliberate or wanton injection of this matter into the case by plaintiff is ground for reversal. See, *e.g., Miller v. Staton, supra; King v. Starr,* 43 Wn. 115, 260 P.2d 351 (1953); *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12 (1923). But, in gauging the circumstances surrounding the introduction of an immaterial fact such as liability insurance, we must defer to the trial court's discretion, if soundly and fairly exercised:

> The trial judge, by virtue of his favored position, should be accorded room for the exercise of sound discretion. He sees and hears the witnesses, the jurors, the parties, counsel, and any bystanders. He can evaluate first hand candor, sincerity, demeanor, intelligence, and any surrounding incidents; whereas, the reviewing court is tied to the written record. *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 437, 397 P.2d 857 (1964).

In the instant case we agree with the trial judge's apparent

conclusion that the plaintiff's unresponsive answer, including the reference to insurance, was not a deliberate act on her part; nor was it a result of pretrial collusion by plaintiff and her counsel.

In a similar vein, the appellant assigns error to the failure of the trial court to grant defendant's motion for a mistrial or a subsequent motion for new trial after plaintiff's counsel on at least two separate occasions used the word "investigator" in questioning witnesses. The question of whether a jury would infer or supply a connection or relationship between the word "investigator" and the existence of *insurance* is speculative, and once again we would defer to the discretion of the trial judge as to the resolution of this trial problem. If the use of a term like "investigator" was part of a subtle effort by plaintiff's counsel to inject the matter of insurance into the trial, the trial judge would be best situated to ascertain that fact and to take remedial action. Our reading of the record does not reveal clear-cut indications that the plaintiff's counsel was guilty of this kind of misconduct.

The appellant next contends that prejudice resulted from a question asked by plaintiff's counsel relating to Mrs. Todd's receipt of an eviction notice from the defendant while she was at work. The appellant asserts that the plaintiff's counsel was deliberately trying to cast the defendant corporation, and its president, "in the role of a villain for evicting this woman and her three children from the apartment." Such may have been his intention, but the matter of eviction from the apartment could well have been material on the loss of income issue in that plaintiff's injury caused her to miss a long period of employment and a resultant loss of income, which in turn could lead to her eviction for inability, or failure, to pay the rent. At any rate, plaintiff's counsel did not pursue the matter further, and defendant's counsel did not cross-examine on any aspect relating to her eviction. Consequently, the trial judge's admonition to the jury to disregard the question and the answer substantially alleviated possible prejudice to the defendant.

■ Appellant further asserts that the trial court should have instructed the jury that the defendant was not in violation of any city ordinance dealing with lighting requirements for stairways in apartments, as alleged and raised by an amendment to the plaintiff's complaint. Following some rather nebulous testimony by an expert (an electrical engineer) called by the plaintiff, the trial judge ruled (out of the presence of the jury) that the ordinance in question was not applicable to the Eulalie Apartments. Under these circumstances, coupled with the fact that the defendant did not submit a requested instruction to this effect in writing as required by Rule 51.04W of Rules of Pleading, Practice and Procedure, we do not think that the trial judge was required to give the defendant's orally requested negative instruction.

■ Finally, the appellant asserts that the trial court erred in giving instruction No. 6 to the jury, which reads as follows:

> In considering the issue of the contributory negligence, if any, on the part of the plaintiff, you are instructed that where there is no reason to anticipate danger, reasonable care does not require one who is walking in the place provided for that purpose, to keep her eyes fixed on the floor immediately in front of her feet.

We held in *Hammer v. Haggard,* 56 Wn.2d 744, 355 P.2d 334 (1960), that where the "danger is apparent" it would be error to give such an instruction. By plaintiff's uncontradicted testimony, she was unaware of any danger caused by the laying of new carpet halfway down the stairs. In fact, the plaintiff testified that she was not aware that any new carpeting had been laid over the old, although she had noticed there were different patterns in the rugs in the hallways and the stairs of the Eulalie Apartments. Prudent care for one's own safety should not and does not entail rigid fixation of one's eyes on the pathway, sidewalk, rug, or stairs ahead in the sense that one need keep a constant watch for any danger that might lurk in the next step. Where no danger is apparent, it is a matter of common experience—even in walking up stairs—that one who keeps

a reasonable watch for his own safety will simply engage in intermittent glances at the path ahead in order to anticipate protruding obstacles, such as new carpeting. The law requires no higher duty of care, and certainly does not require one to keep his or her eyes fixed on the floor immediately ahead. The instruction was properly given.

For the reasons indicated herein, the judgment of the trial court, entered on the jury's verdict, is in all respects affirmed.

ROSELLINI, C. J., DONWORTH and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.