[No. 23727-6-I.   Division One.   August 6, 1990.]

GERALD HOLZ, ET AL, *Respondents*, v. BURLINGTON NORTHERN RAILROAD COMPANY, *Appellant*.

*Daniel L. Kinerk, Susan L. Pierini, Kurt W. Kroschel, Rexanne Gibson,* and *Kurt W. Kroschel & Associates,* for appellant.

*Dean Brett, Rand F. Jack,* and *Brett & Daugert,* for respondents.

WEBSTER, J.—Burlington Northern appeals a wrongful death judgment, contending the jury should have known the decedent lacked a motorcycle endorsement, that he failed to complete a traffic safety education course, and that, at the time of his death, he violated a statute permitting only holders of a motorcycle endorsement to ride without supervision or at night.

## FACTS

On the night of September 17, 1987, 16–year–old Jody Holz unwittingly drove his 750 cc motorcycle into a black railroad tank car straddling an unlit Whatcom County road. He broke his neck and died. His parents and the administrator of his estate filed this action for wrongful death against Burlington Northern and Whatcom County. Plaintiffs' theory was that Burlington Northern was negligent in blocking the road because this was unnecessary and contrary to custom. Further, the whole accident could have been avoided at a cost of $1.99 if Burlington Northern had used a 30–minute flare.

Prior to trial, the court granted plaintiffs' motion in limine to exclude any reference to the fact that Jody Holz was not licensed to ride a motorcycle. At the time of his death, he had only a driver's instruction permit, as opposed to a motorcycle endorsement, RCW 46.20.500,[1] or motorcyclist's instruction permit, RCW 46.20.055.[2] Burlington

[1]RCW 46.20.500: "Special endorsement for motorcycle operator's license—Moped exception. No person may drive a motorcycle or a motor–driven cycle unless such person has a valid driver's license specially endorsed by the director to

Northern opposed the motion in limine, arguing that Jody Holz never completed a "traffic safety education course" as required of minor license applicants, RCW 46.20.100,[3] and that he rode in violation of former RCW 46.20.510(3), now subsection (2),[4] which prohibits night riding and unsupervised riding by persons without a motorcycle endorsement.

enable the holder to drive such vehicles, nor may a person drive a motorcycle of a larger engine displacement than that authorized by such special endorsement, or by an instruction permit for such category . . .".

[2]RCW 46.20.055: "Instruction permits and temporary licenses. (1) Any person who is at least fifteen and a half years of age may apply to the department for an instruction permit for the operation of any motor vehicle except a motorcycle. Any person who is at least sixteen years of age may apply for an instruction permit for the operation of a motorcycle. The department may in its discretion, after the applicant has successfully passed all parts of the examination other than the driving test, issue to the applicant a driver's or motorcyclist's instruction permit.
" . . . .
"(b) A motorcyclist's instruction permit entitles the permittee while having the permit in immediate possession to drive a motorcycle upon the public highways for a period of ninety days as provided in *RCW 46.20.510(3)."

[3]RCW 46.20.100: "Application of minor under eighteen—Cosignature, traffic safety education course required—Exception. The department of licensing shall not consider an application of any minor under the age of eighteen years for a driver's license or the issuance of a motorcycle endorsement for a particular category unless:
" . . . .
"(2) The applicant has satisfactorily completed a traffic safety education course . . . *Provided, however,* That the director may upon a showing that an applicant was unable to take or complete a driver education course waive that requirement if the applicant shows to the satisfaction of the department that a need exists for the applicant to operate a motor vehicle and he or she has the ability to operate a motor vehicle in such a manner as not to jeopardize the safety of persons or property . . . *For a person under the age of eighteen years to obtain a motorcycle endorsement, he or she must successfully complete a motorcycle safety education course that meets the standards established by the department of licensing.*" (Italics ours.)

[4]RCW 46.20.510(3) (which was renumbered subsection (2) by Laws of 1989, ch. 337, § 9, but otherwise left materially unchanged) provides in pertinent part: "An individual with a motorcyclist's instruction permit may not carry passengers, *may not operate a motorcycle during the hours of darkness* or on a fully–controlled, limited–access facility, *and shall be under the direct visual supervision of a person with a motorcycle endorsement of the appropriate category*". (Italics ours.)

At trial, Burlington Northern twice offered to prove that Jody Holz was not licensed to ride a motorcycle without supervision or at night; the offer did not go further. The court adhered to its prior ruling. The court also refused to permit Burlington Northern to cross–examine an 18–year–old friend of Jody Holz, Sheri Vermeer, as to whether Jody completed a driver's education course. During direct examination, when asked how she met Jody, Miss Vermeer volunteered that she met him "in Driver's Ed". Out of the presence of the jury, it was established that Miss Vermeer did not know whether Jody finished the driver's education course, although Jody's mother later confirmed that he had not.

The jury heard conflicting evidence as to whether Jody Holz was speeding, whether he was wearing a helmet, and whether the tank car was visible. The jury found Jody Holz and Whatcom County each 2.5 percent negligent, and Burlington Northern 95 percent responsible. The jury did not know that riding without supervision or at night is illegal when the rider lacks a motorcycle endorsement because Burlington Northern's proposed instruction to this effect was refused.

### Required Connection Between Unlicensed Status and Injury

Burlington Northern contends the trial court erred in granting plaintiffs' motion in limine and in refusing its proposed instruction. We disagree; under the facts of this case, it was not error to exclude reference to the fact that Jody Holz lacked a motorcycle endorsement.

■ Burlington Northern ignores the crucial question: Would a person with a motorcycle endorsement, enabling that person to ride unsupervised and at night, have been any better off, *i.e.*, any less likely to have suffered the same fate? Riding a motorcycle without supervision at night is not illegal; the Legislature has declared only that doing so without a motorcycle endorsement is. *See* RCW 46.20-.055(1)(b), .510(2). To show a causal connection between

this illegality and an accident, one must show that the accident was more likely to result from it than from the legal behavior of riding unsupervised at night *with* a motorcycle endorsement.

If a rider with a motorcycle endorsement would have suffered the same fate, evidence that Jody Holz lacked an endorsement would be irrelevant. *See* ER 401. Moreover, it would carry with it "the danger of unfair prejudice, confusion of the issues, or misleading the jury," ER 403, because the jury might feel his family and personal administrator were less worthy of compensation than if he were a fully licensed rider, *i.e.,* a law–abiding citizen. Like character evidence generally, evidence of other bad or illegal acts

> tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened."

Fed. R. Evid. 404(a) advisory committee note, quoting California Law Revision Commission Report rejecting the use of character evidence in civil cases.

Reasonable minds often differ as to how to strike the balance between probative value and unfair prejudice, and the trial judge in general is in a better position to weigh the competing considerations. Thus, evidentiary determinations of the sort presented here are within the sound discretion of the trial court. *See State v. Rice,* 48 Wn. App. 7, 11–13, 737 P.2d 726 (1987) (upholding exclusion of evidence). This is particularly true when the trial court excludes evidence that a person lacked a proper license at the time of an accident because, absent evidence to the contrary, unlicensed status is irrelevant. *See* Annot., *Lack of Proper Automobile Registration or Operator's License as Evidence of Operator's Negligence,* 29 A.L.R.2d 963 (1953, later case serv., 1981 & supp. 1989).

Instead of focusing on the critical issue, Burlington Northern simply argues: Jody Holz did not have a

motorcycle endorsement; thus, he was prohibited from riding unsupervised or at night; if he had not violated this restriction, he would not have died. This argument misses the point. In all cases upholding the general rule that unlicensed status is irrelevant, the same argument could be made: the accident victim was not licensed to drive; persons without a driver's license may not drive; if the accident victim had obeyed this restriction, there would have been no injury. Here, there is no evidence or argument as to how or why a person with a motorcycle endorsement (who as a minor would have had to pass a motorcycle safety education course) would have been any less likely to suffer the same fate as Jody Holz. Therefore, Burlington Northern's argument fails to prove a causal connection between the accident and the alleged negligence of riding unsupervised at night without a motorcycle endorsement.

Burlington Northern relies on *White v. Peters,* 52 Wn.2d 824, 828, 329 P.2d 471 (1958) for a distinction between merely lacking a license and violating the restrictions of a limited license. However, *White* conforms to the general rule noted above. The plaintiff had a restricted driver's license because his right leg was amputated below the knee. The restriction required that his automobile be equipped with a hand throttle mounted on the steering wheel. *White,* at 827. The plaintiff testified "that, when he saw defendant's car sliding toward his car just prior to the collision, he had no difficulty taking his right foot from the gas throttle." *White,* at 828. Implicit in this observation by the court is that the plaintiff might have had difficulty transferring his prosthetic foot from the gas pedal to the brake pedal whereas a person with a natural right foot could have done so sooner. Although the court did not refer to any evidence that this was in fact the case, common experience confirms that the quickest way to transfer one's foot from a gas pedal to a brake pedal is to rotate one's ankle, a task the plaintiff in *White* was unable to accomplish. Because the

evidence supported an inference that the plaintiff's violation of the restriction was a proximate cause of the accident, the jury was properly instructed that the violation was contributory negligence. *White,* at 828.

Similarly, in three out-of-state cases upon which Burlington Northern relies, the evidence supported an inference that the alleged negligence was a proximate cause of injury. In *Duncan v. Hixon,* 223 Va. 373, 288 S.E.2d 494, 495 (1982), the court noted that an adult driver might have avoided the collision in that case. In *Dorsett v. Dion,* 347 So. 2d 826, 827 (Fla. Dist. Ct. App. 1977), there was a lack of contact between the plaintiff's vehicle and the defendant's vehicle; this and other circumstances led the court to conclude "that the plaintiff's injury may well have resulted from her own inexperience and her inability to handle her own car." In *Klanseck v. Anderson Sales & Serv., Inc.,* 426 Mich. 78, 393 N.W.2d 356 (1986), the court emphasized the plaintiff's minimal experience riding a 1,000 cc motorcycle and defense testimony that a front tire blowout would not have caused more experienced riders to fall.

Here, there was no testimony or other evidence that a holder of a motorcycle endorsement, even if more experienced and knowledgeable than Jody Holz,[5] would have been less likely to collide with Burlington Northern's tank car. Speed was not a significant factor. The speed limit was 35 miles per hour, but the average speed of motorists at the place of the collision was 43 miles per hour. A witness testified that Jody Holz was traveling between 35 and 40 miles per hour. Even if he did not exceed the speed limit,

---

[5]*Burlington Northern does not point to any portion of the record or even argue that Jody Holz was less experienced or knowledgeable than a holder of a motorcycle endorsement. Even if it could be inferred that as a general matter a motorcycle endorsement carries with it greater experience and knowledge, the probative value of an endorsement as proof of greater experience and knowledge is slight in comparison to proof of what actually happened, and whatever probative value does accompany an endorsement will often be outweighed by the unfair prejudice naturally resulting from the jury hearing that the injured motorcyclist was breaking the law at the time of the accident in a way that, on its face, appears to be significant, but upon reflection, is not.*

according to an accident reconstructionist, he still would have hit the tank car at 17 miles per hour. Plaintiffs' counsel argued, "You can break your neck pretty easily going under a tank car at 17 miles per hour." The lack of any head injury proves that a helmet was worn; or, if not, this too was insignificant. Finally, although Jody Holz appears not to have used his high beams, there was testimony that this was the prudent thing to do because of a foggy mist which regularly settled in the area and which was present on the night in question. Knowing the relevant facts, the jury concluded the accident was due almost entirely to Burlington Northern's failure to exercise due care at a time when visibility was crucial to a licensed or unlicensed rider alike.

An analogous situation occurred in *Mills v. Park,* 67 Wn.2d 717, 409 P.2d 646 (1966). During a severe snowstorm, the defendant, who was 18 years old, rear–ended the plaintiffs, who were traveling at approximately 10 miles per hour due to the diminished visibility occasioned by the heavy snow. *Mills,* at 718. More than a half–mile before the accident, the defendant barely saw a snowplow in time to avoid a collision. Visibility worsened until, in the defendant's own words, it was like being in a white room where he could not see a thing. He slowed to between 20 and 35 miles per hour, but did not see the plaintiffs' car until it was 10 to 15 feet ahead, which was too close to avoid. *Mills,* at 720. The defendant did not have a valid driver's license, but the trial court excluded inquiry into this subject. The Supreme Court affirmed, saying, "We find nothing in the record to show a causal relation between the defendant's failure to have a valid driver's license and his asserted acts of negligence." *Mills,* at 721. Presumably, the court would have ruled differently if, for example, the defendant lacked sufficient vision to obtain a license, or if his failure to obtain a license related to some other requirement that would have made a licensed driver more likely to slow to a safe speed in poor visibility.

In *Switzer v. Sherwood*, 80 Wash. 19, 23, 141 P. 181 (1914), an unlicensed motorcyclist who acted with due care was hit by a car whose driver was clearly negligent. The court rejected a defense of contributory negligence, saying, "The injury would have happened in the same manner it did happen had the respondent theretofore paid the license fee due the state and been in possession of the statutory license." *Switzer*, at 23. Here, too, absent evidence or argument to the contrary, the record does not support an inference that a person with a motorcycle endorsement would have been any better off than Jody Holz. He was 6 feet 3 inches and 180 pounds; thus, youthful size was not a factor. The evidence indicates that the problem was a lack of visibility, not any lack of skill, capability, or care that a fully licensed rider would have possessed or exercised but which Jody Holz did not.

The legislative finding that *minors* need a traffic safety education course before they receive a motorcycle endorsement, RCW 46.20.100, and that new riders pose a greater risk to themselves than more experienced riders,[6] RCW 46.20.055, .510(2), suggests as a general matter that persons without a motorcycle endorsement, especially minors, contribute to accidents which occur at night or while they are unsupervised. Legislation aimed at the increased risks posed by minors affected by alcohol was found to support an inference of proximate cause in *Young v. Caravan Corp.*, 99 Wn.2d 655, 662, 663 P.2d 834, 672 P.2d 1267 (1983). However, in that case, a minor got into a 1–car accident with a blood alcohol content of .21 percent. His consumption of alcohol seems clearly to have been a proximate contributing cause of his accident and death. He drank and drove, making him more susceptible to crash, and he drank

---

[6]A Senate Transportation Committee synopsis of Substitute Senate Bill 4692, from which RCW 46.20.510 derives, is appended to Burlington Northern's brief and not objected to by respondents. The synopsis states that most motorcycle accidents occur during the first year of operation and that motorcycle size affects maneuverability and control and a person's ability to handle the cycle and possibly avoid an accident.

as a minor, making him especially susceptible, as evidenced by the single–car collision.

Although experience shows that minors are less able to handle alcoholic beverages than adults, *Young,* at 662, this would not have been relevant if the decedent had been rear–ended by a reckless motorist while innocently waiting to turn left at a green light. In that event, there would have been no causal connection between the decedent's death and his negligence in drinking as a minor or in driving while drunk, whereas the danger that the jury would have been unfairly prejudiced against the decedent would have been great. That is the analogous situation here. The trial court acted within its discretion in excluding reference to the statutory violations either on the ground that they were irrelevant or that their probative value, if any, was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury". ER 403.

The judgment is affirmed.

SWANSON and SCHOLFIELD, JJ., concur.