170 P.3d 1189 (2007)
Amber L. KAPPELMAN, Appellant,
v.
Theodore J. LUTZ, Respondent.
No. 24981-6-III.
Court of Appeals of Washington, Division 3.
November 6, 2007.
*1190 Gordon Thomas Carey Jr., Attorney at Law, Portland, OR, for Appellant.
Jackson H. Welch, Duggan, Schlotfeldt & Welch PLLC, Vancouver, WA, for Respondent.
*1191 SWEENEY, C.J.
¶ 1 The decision by a trial judge to exclude evidence is a decision vested in the discretion of the trial judge, not us. And we will overturn that decision only when we conclude that the trial judge has abused his or her discretion by refusing to admit the evidence. Here, the judge refused to admit evidence that the operator of a motorcycle did not have the proper endorsement to carry a passenger or drive at night. We are unable to conclude that the trial judge abused his discretion by refusing to admit evidence that the defendant was not properly licensed. We therefore affirm the jury's verdict for the defendant.

FACTS
¶ 2 Theodore J. Lutz took Amber L. Kappelman for a ride on his motorcycle at night. He had only an instructional permit. He did not have a motorcycle endorsement. And so he could not legally carry passengers or drive at night. He struck a deer while on the trip with Ms. Kappelman and she was injured. She sued him for damages.
¶ 3 Mr. Lutz moved at trial to exclude evidence that he was not properly licensed. He argued that the evidence was not relevant and that the prejudicial value of the evidence outweighed its probative value. The trial judge agreed and refused to admit evidence that Mr. Lutz did not have the appropriate state license to carry passengers on his motorcycle or to drive it at night. And the trial judge refused to admit evidence that Mr. Lutz had violated the terms of his permit.
¶ 4 Ms. Kappelman showed that she had no experience on motorcycles. She showed that she was not properly garbed for the ride; she wore only jeans, a tank top, zip-up sweatshirt, and sandals. She showed that Mr. Lutz probably made errors in judgment in maneuvering his motorcycle as he tried to avoid the deer. She showed he was speeding. She showed that he hit the brakes and lost control of the motorcycle. And she showed that all of this took place at night.
¶ 5 The jury nonetheless returned a verdict in favor of Mr. Lutz.

DISCUSSION
¶ 6 Ms. Kappelman contends the court erred by refusing to allow evidence that Mr. Lutz violated the conditions of his permit by carrying her on the motorcycle and driving it at night. We review a trial judge's decision to exclude evidence for abuse of discretion. Thornton Creek Legal Defense Fund v. City of Seattle, 113 Wash.App. 34, 58, 52 P.3d 522 (2002). The conclusion "abuse of discretion" turns on whether the judge had tenable grounds or reasons to exclude the evidence. Braut v. Tarabochia, 104 Wash.App. 728, 733, 17 P.3d 1248 (2001).
¶ 7 Here, the trial judge concluded that:
In this case, however, I can't find that the fact that Mr. Lutz was operating without a valid endorsement is really relevant to how he operated the motorcycle.
The real issue in this case is was he . . . was he negligent? Was he speeding? Was he not keeping a proper lookout? Did he lose control of the motorcycle because of his negligence? Did that cause the injury? . . . Mr. Lutz could have been fully qualified as a motorcycle operator and still be negligent. The fact that he wasn't fully qualified under state law as a motorcycle operator doesn't mean that he was or wasn't negligent.
Report of Proceedings (RP) (Motions) at 15.
¶ 8 We conclude those are tenable grounds for this trial judge to exclude the evidence that Mr. Lutz was not properly licensed. Indeed, for us the decision  again, a discretionary decision  was easily supported by compelling case law. Holz v. Burlington N.R.R. Co., 58 Wash.App. 704, 711-13, 794 P.2d 1304 (1990). In Holz, the trial court refused to admit evidence that the plaintiff was not properly licensed when he drove his motorcycle into the side of a railroad car. Id. at 705, 794 P.2d 1304. The Court of Appeals affirmed noting that the crucial question was:
Would a person with a motorcycle endorsement, enabling that person to ride unsupervised and at night, have been any better off, i.e., any less likely to have suffered the same fate? Riding a motorcycle without supervision at night is not illegal; the *1192 Legislature has declared only that doing so without a motorcycle endorsement is.
Id. at 707, 794 P.2d 1304. The court in Holz went on to hold that even if it was relevant, it was inadmissible under ER 403 because it had the danger of unfair prejudice. Id. at 708, 794 P.2d 1304.
¶ 9 The trial judge here applied the same reasoning  would the accident have been less likely if Mr. Lutz had the piece of paper (his motorcycle endorsement) in his back pocket. Ultimately the question is whether the accident would have happened if Mr. Lutz had a proper license, not proper training, experience, or good judgment, but whether he had the piece of paper. The statutory violation here was speeding and reckless driving; statutory violations Ms. Kappelman showed.
¶ 10 Mr. Lutz told the police that he accelerated out of Husum, Washington, at approximately 65 m.p.h. He told the investigative officer that he may have been going 60 m.p.h. when he hit and killed the deer. An accident reconstruction consultant, Robert Stearns, testified that the motorcycle was going in excess of the posted speed limit, 55 m.p.h., before any braking occurred to avoid the deer. He estimated that the motorcycle was going 70 to 77 m.p.h. prior to braking. He stated that was a conservative estimate and "eighty miles an hour would not be unreasonable." RP (Trial) at 246.
¶ 11 Ms. Kappelman testified that during the ride Mr. Lutz kept accelerating to the point where she became "nervous." RP (Trial) at 72. She felt as if she was "being sucked off" due to the speed. Id. Ms. Kappelman saw a deer in the left lane, going slowly to the right. At roughly 50 feet from the deer, Mr. Lutz stood on the brakes hard. The motorcycle skidded.
¶ 12 Mr. Stearns testified that the speed at the time of impact depended upon several factors: "[W]ith the vehicle traveling approximately seventy miles an hour prior to the onset of the emergency braking, the impact speed would be approximately sixty-three miles an hour." RP (Trial) at 247.
¶ 13 Ms. Kappelman saw the deer after Mr. Lutz. She estimated this to be 250 to 300 feet away. Mr. Stearns testified that if Mr. Lutz was going 55 m.p.h. and he saw the deer at least 300 feet away he could have stopped safely. Mr. Stearns also explained that Mr. Lutz could have stopped at 60 miles an hour had he seen the deer at least 300 feet away and took his hand off the accelerator.
¶ 14 Mr. Stearns told the jury that "[i]f you encounter something unexpected, and you haven't trained properly for it, the chance of having a tragedy is increased." RP (Trial) at 271.
¶ 15 Ms. Kappelman testified that within a matter of seconds the bike hit the deer. Ms. Kappelman flew off the motorcycle and slid down the roadway approximately 200 feet. The police testified that the skid marks were 41 feet, 6 inches long. The police also indicated that the bike slid approximately 330 feet without the riders. Both Mr. Lutz and Ms. Kappelman were ejected.
¶ 16 She then showed that (1) Mr. Lutz was inexperienced, (2) he showed poor judgment in carrying a passenger at night, and (3) he reacted poorly to the hazard posed by the deer. Yet the question here, like the question in Holz, is whether the accident would have been avoided if Mr. Lutz were properly licensed? The trial judge concluded that it would not have been avoided and that is supported by this record.
¶ 17 At the end of the day, Mr. Lutz is the motorcycle driver he is, with his experience, training, and background. And he reacted the way he did whether or not he was properly licensed. The fact that he was not licensed is not relevant to how and why he drove his motorcycle in the way he did on the evening of this accident, only his driving conduct is relevant.
¶ 18 This case is not distinguishable from Holz with one exception: the rule we apply here cut against the defendant in Holz. And here it cuts against the plaintiff. That is not a reason to apply the rule differently. In Holz, the court concluded that evidence of the lack of a motorcycle endorsement would carry with it "`the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Holz, 58 Wash.App. at 708, 794 *1193 P.2d 1304 (quoting ER 403). Evidence of other bad or illegal acts "`tends to distract the trier of fact from the main question of what actually happened on the particular occasion.'" Holz, 58 Wash.App. at 708, 794 P.2d 1304 (quoting Fed.R.Evid. 404(a) advisory committee note).
¶ 19 The trial judge is generally in a better position to weigh the probative value and the unfair prejudice in a case. Holz, 58 Wash.App. at 708, 794 P.2d 1304. That is why these questions are vested in the discretion of the trial court. Id. This is especially true when the trial court excludes evidence "that a person lacked a proper license at the time of an accident because, absent evidence to the contrary, unlicensed status is irrelevant." Id.
¶ 20 The real issue here was whether Mr. Lutz was operating the motorcycle in a negligent manner on the day of the accident. His speed, reaction to the circumstances, and inexperience would not have changed with a motorcycle endorsement. See id. at 707-09, 794 P.2d 1304. He could have still been negligent even with the endorsement.
¶ 21 Nor did the trial judge abuse his discretion by refusing to admit evidence that Mr. Lutz was cited. The fact of citation or noncitation is generally inadmissible. Warren v. Hart, 71 Wash.2d 512, 514-16, 429 P.2d 873 (1967).
EMERGENCY INSTRUCTION
¶ 22 Mr. Lutz proposed a jury instruction based upon 6 Washington Practice, Washington Pattern Jury Instruction: Civil 12.02, at 142 (5th ed. 2005) (WPI):
DUTY OF ONE CONFRONTED BY AN EMERGENCY
A person who is suddenly confronted by an emergency through no negligence of his or her own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though it is not the wisest choice.
Clerk's Paper at 181. Ms. Kappelman objected to the instruction. The court, nevertheless, gave the instruction to the jury.
¶ 23 Ms. Kappelman contends that any emergency here followed Mr. Lutz's own negligence, and he was therefore not entitled to the emergency instruction. Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wash.2d 188, 197, 668 P.2d 571 (1983); Bennett v. McCready, 57 Wash.2d 317, 320, 356 P.2d 712 (1960); Sandberg v. Spoelstra, 46 Wash.2d 776, 782-83, 285 P.2d 564 (1955); Tuttle v. Allstate Ins. Co., 134 Wash.App. 120, 130-31, 138 P.3d 1107 (2006).
¶ 24 Mr. Lutz responds that he was entitled to the instruction because he was confronted by a sudden emergency placing him in peril, citing Mills v. Park.[1] The emergency required him to make an immediate or instinctive choice between alternative courses of action without time for reflection and he did so, citing Tuttle.[2] And the emergency was not created wholly or in part by his negligence, citing Haynes v. Moore.[3]
¶ 25 First, we consider jury instructions in their entirety. Brown, 100 Wash.2d at 194, 668 P.2d 571. "Instructions are sufficient if they (1) permit each party to argue his theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law." Id. Generally, we review a court's decision to give an instruction for an abuse of discretion. Tuttle, 134 Wash.App. at 131, 138 P.3d 1107. But we will review a court's decision to give an instruction based upon a ruling of law de novo. Id. Whether the emergency doctrine applies to these facts, thus warranting the giving of the instruction, is a question of law. Id.
¶ 26 WPI 12.02 describes the duty of one confronted by an emergency and is identical to the instruction given by the *1194 court here. The essential element invoking the emergency doctrine is confrontation by a sudden peril requiring an instinctive reaction. Seholm v. Hamilton, 69 Wash.2d 604, 609, 419 P.2d 328 (1966). An instruction on this doctrine is appropriate only when there are facts presented from which the trier of fact could conclude that the emergency arose through no fault of the person seeking to have the doctrine invoked. Tuttle, 134 Wash. App. at 131, 138 P.3d 1107. The instruction is appropriate when the emergency is not brought about, in whole or in part, by the negligence of the party seeking to invoke the doctrine. Sandberg, 46 Wash.2d at 783, 285 P.2d 564. The court should give the instruction if the evidence is conflicting. Tuttle, 134 Wash.App. at 131, 138 P.3d 1107 (citing Bell v. Wheeler, 14 Wash.App. 4, 6, 538 P.2d 857 (1975)).
¶ 27 Ms. Kappelman claims the instruction was not appropriate here because Mr. Lutz created the emergency by his own negligence. Certainly, there was evidence that Mr. Lutz created the emergency by his negligence before the jury. But Mr. Lutz also showed that the emergency, not negligence, caused the accident. Mr. Lutz showed and argued that the accident was caused when he was unable to avoid hitting the deer either by stopping or moving around it. The situation itself would qualify as a sudden emergency. Mr. Lutz testified he first tried to avoid the deer, but when he determined that was not going to work, he applied his brakes.
¶ 28 Ms. Kappelman presented evidence that Mr. Lutz had time to react and he did not make an instinctive choice. She also showed that he was speeding and thus not entitled to the instruction. The trial court should give the emergency instruction if the evidence is conflicting. Tuttle, 134 Wash. App. at 131, 138 P.3d 1107; Bell, 14 Wash. App. at 6, 538 P.2d 857. Mr. Lutz presented evidence that he was confronted by a sudden emergency. The instruction was proper. Tuttle, 134 Wash.App. at 130-31, 138 P.3d 1107; Bell, 14 Wash.App. at 6, 538 P.2d 857.
STATEMENT TO THE INSURANCE ADJUSTER
¶ 29 Ms. Kappelman testified that five weeks after the accident she said that Mr. Lutz could have been going slower, but that she did not blame him for the accident. No one objected. Ms. Kappelman's counsel then asked if he could ask her the circumstances of the statement. He wanted to show that she was talking to Mr. Lutz's insurance adjuster. The court refused to allow further inquiry.
¶ 30 Ms. Kappelman contends that the trial judge abused his discretion. We review a decision to admit or exclude evidence for abuse of discretion. City of Kennewick v. Day, 142 Wash.2d 1, 5, 11 P.3d 304 (2000). Again, a court abuses its discretion when no tenable grounds exist for its decision. Hill v. Cox, 110 Wash.App. 394, 409, 41 P.3d 495 (2002).
¶ 31 Mr. Lutz's counsel asked Ms. Kappelman on cross-examination if she had previously indicated that she did not blame Mr. Lutz for the accident. She responded: "Yes. I did. I said he could have been going slower and yet I did not blame him. Again, his girlfriend was my friend." RP at 125. There was no objection to the question or the answer.
¶ 32 Ms. Kappelman's counsel then asked that he be allowed to inquire about the circumstances of this statement. He wanted to show that Ms. Kappelman was speaking to Mr. Lutz's insurance agent. The court declined stating the question was proper in cross-examination and went to Ms. Kappelman's credibility. Ms. Kappelman explained on redirect that she did blame Mr. Lutz and made the apparently exculpatory statement because she did not want him to get into trouble.
¶ 33 The court permitted testimony of the circumstances of the statement but refused testimony that the statement was made to an insurance adjuster. Ms. Kappelman was able to testify why she made the statement, not just who she made the statement to. The purpose of the question was to attack her credibility, which is appropriate on cross-examination. See Weyerhaeuser v. Pierce County, 124 Wash.2d 26, 34, 873 P.2d 498 (1994).
¶ 34 Furthermore, the fact that a defendant in a personal injury case carries *1195 liability insurance is not material to the questions of negligence and damages. Todd v. Harr, Inc., 69 Wash.2d 166, 168, 417 P.2d 945 (1966); see also ER 411. And the willful, deliberate, or collusive interjection of such evidence at trial is grounds for a new trial. Todd, 69 Wash.2d at 168-69, 417 P.2d 945. We conclude there was no abuse of discretion in prohibiting further inquiry here.
EVIDENCE OF THE ACCELERATION CAPABILITY OF THE MOTORCYCLE
¶ 35 The court permitted evidence of the top speed of Mr. Lutz's motorcycle but refused to admit evidence of its acceleration capacity. Ms. Kappelman contends the evidence was relevant and the court's ruling was in error.
¶ 36 We review a decision to admit or exclude evidence for abuse of discretion. Day, 142 Wash.2d at 5, 11 P.3d 304. Ms. Kappelman claims the evidence was relevant to show that Mr. Lutz could have accelerated from 45 m.p.h. to 90 m.p.h. in a short period of time. But there was evidence about how fast Mr. Lutz was traveling. Mr. Lutz testified that at the time he saw the deer he was going more than 55 m.p.h. He testified he told the officer he was going 60 to 65 m.p.h. Ms. Kappelman testified he was going 80 to 90 m.p.h. How fast he was able to accelerate was not the issue; how fast he was going was the issue. The jury heard evidence regarding his speed. The trial judge did not abuse his discretion by excluding evidence of acceleration capacity.

HOLDING
¶ 37 This case was tried to a jury over the course of three days. The factual question before the jury here was whether Mr. Lutz operated his motorcycle negligently. Whether he was properly licensed is not relevant to that factual question. The jury here concluded that he was not negligent. That was a question for the jury, not us.
¶ 38 Certainly, the perfect case was not tried here. But the perfect case has not been and never will be tried. The parties here are not entitled to a perfect trial. Freeman v. Intalco Aluminum Corp., 15 Wash. App. 677, 686, 552 P.2d 214 (1976). The integrity of every jury verdict is important, not just those verdicts we approve of.
¶ 39 We affirm the judgment for the defendant, Mr. Lutz.
I CONCUR: BROWN, J.
STEPHENS, J. (dissenting).
¶ 40 I agree with the majority's observation that there is no perfect trial. Yet, parties are entitled to a fair trial, including the ability to present their theory of the case. Moreover, the jury is entitled to decide the facts. By excluding relevant evidence of Theodore Lutz's statutory violation based on the factual determination that it played no part in the motorcycle accident, the trial court improperly prevented Amber Kappelman from arguing her theory of the case, and encroached on the jury's prerogative to determine proximate cause. I would reverse and remand for a new trial.

ANALYSIS
¶ 41 The trial court excluded evidence that at the time of the accident Mr. Lutz was operating the motorcycle in violation of his limited instruction permit, was cited, admitted to the infraction and paid the fine. The majority describes the issue as whether having "the piece of paper (his motorcycle endorsement) in his back pocket" would have made the accident less likely. Majority at 1192. This misses the significance of the issue. A motorcycle endorsement is not simply a "piece of paper." The motorcycle endorsement program under chapter 46.20 RCW is designed to assure that motorcycle operators have the skills necessary for safe on-street operation. See RCW 46.20.515; RCW 46.81A.001 (purpose). This is consistent with the general purpose of the chapter to prevent reckless or negligent drivers from operating vehicles on the public highways. Frank v. Dep't of Licensing, 94 Wash.App. 306, 311, 972 P.2d 491 (1999). In order to obtain a motorcycle endorsement, a person must be able to demonstrate the ability to safely maneuver a motorcycle, "including emergency braking and turning as may be required to avoid an impending collision." *1196 RCW 46.20.515. Because a person who has merely an instruction permit is still learning to ride a motorcycle and has not yet passed a motorcycle driving test, he or she may not carry passengers or drive during hours of darkness. RCW 46.20.510(2). It is undisputed that Mr. Lutz violated RCW 46.20.510(2).
¶ 42 Notably, the trial court recognized that Mr. Lutz's inexperience operating a motorcycle was relevant (Report of Proceedings (Motions) at 16), yet disallowed evidence of the statutory violation to show such inexperience constituted negligence. Because inexperience may not necessarily indicate negligence in a particular setting, however, evidence of the statutory violation was not only relevant but necessary to provide the jury a context in which to evaluate Mr. Lutz's inexperience. Given that the central purpose of the motorcycle endorsement program is to assure that motorcycle operators possess the necessary skills for safe on-street driving, a motorcycle endorsement bears directly on the experience of the operator. The majority gives too little credence to the purpose of a motorcycle endorsement when it concludes: "[Mr. Lutz's] speed, reaction to the circumstances, and inexperience would not have changed with a motorcycle endorsement." Majority at 1193.
¶ 43 The trial court refused to allow evidence of the statutory violation without applying the proper analysis to determine admissibility. Although there was much argument and briefing on this issue, the trial court did not address RCW 5.40.050 or the test under Restatement (Second) of Torts § 286 (1965) in its ruling on the motion in limine. A court's discretionary decision is untenable if it was reached without applying the proper legal standard. T.S. v. Boy Scouts of Am., 157 Wash.2d 416, 423-24, 138 P.3d 1053 (2006). The majority does not address this. RCW 5.40.050 states that a breach of duty imposed by a statute may be considered by the trier of fact as evidence of negligence. A statute may impose a duty that differs from the duty of ordinary care. Mathis v. Ammons, 84 Wash.App. 411, 416, 928 P.2d 431 (1996), review denied, 132 Wash.2d 1008, 940 P.2d 653 (1997). For more than 30 years, Washington has followed the four-part test set forth in the Restatement (Second) of Torts § 286 (1965) to determine if a statute imposes such a duty. Id.; see also Barrett v. Lucky Seven Saloon, Inc., 152 Wash.2d 259, 269, 96 P.3d 386 (2004). Under this test:
The statute's purposes, exclusively or in part, must be (1) to protect a class of persons that includes the person whose interest is invaded; (2) to protect the particular interest invaded; (3) to protect that interest against the kind of harm that resulted; and (4) to protect that interest against the particular hazard from which the harm resulted.
Mathis, 84 Wash.App. at 416, 928 P.2d 431. When a statute meets this test, evidence of a statutory violation is admissible on the issue of negligence. Id. at 417-18, 928 P.2d 431. And the party offering the evidence is entitled to a jury instruction consistent with RCW 5.40.050. 6 WASHINGTON PRACTICE, WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 60.03, at 481 (2005) (WPI); see Barrett, 152 Wash.2d at 274-75, 96 P.3d 386.
¶ 44 Ms. Kappelman demonstrated that evidence of Mr. Lutz's statutory violation meets the Restatement test. As noted, the general purpose of chapter 46.20 RCW is to prevent reckless or negligent drivers from operating vehicles on the public highways. The class of people protected by the motorcycle endorsement program includes citizens who share the public highways with motorcycle operators. This certainly includes Ms. Kappelman.
¶ 45 The second and third Restatement inquiries ask whether RCW 46.20.510 was intended to protect against the interest invaded and the harm that resulted. See Barrett, 152 Wash.2d at 273, 96 P.3d 386. The statute here undeniably sought to protect Ms. Kappelman from being injured in a motorcycle accident.
¶ 46 Finally, the statutory purpose and language make clear that RCW 46.20.510 was aimed to protect against the type of danger that caused Ms. Kappelman's injuries. See Barrett, 152 Wash.2d at 273, 96 P.3d 386. The motorcycle endorsement program is designed *1197 to promote motorcycle safety and protect others from harm that may result from a driver lacking the experience and skill necessary to obtain a motorcycle endorsement. See RCW 46.20.515, 520; RCW 46.81A.001. Because Ms. Kappelman established that RCW 46.20.510 met the requirements of Restatement § 286, supra, the evidence of Mr. Lutz's statutory violation was evidence of negligence that should have been admitted under RCW 5.40.050.[1]
¶ 47 In affirming the trial court's exclusion of this evidence, the majority finds persuasive its reliance on Holz v. Burlington N.R.R. Co., 58 Wash.App. 704, 794 P.2d 1304 (1990). In that case, 16-year-old Jody Holz died after driving his motorcycle into a black railroad tank car that was straddling an unlit county road. Id. at 705, 794 P.2d 1304. His family brought a wrongful death suit against the railroad and the county. Id. The trial court granted the family's motion to exclude any reference to the fact that Jody did not have a motorcycle endorsement at the time of the accident and was violating the terms of his instruction permit. Id. at 705-06, 794 P.2d 1304. After a jury found the railroad 95 percent responsible, it appealed, claiming the court erred in excluding reference to Jody's statutory violation. Id. at 706, 794 P.2d 1304. The court of appeals affirmed, concluding on the facts of the case that the statutory violation was not a proximate cause of the accident. Id. at 708-10, 794 P.2d 1304.
¶ 48 Significantly, Holz was decided on the narrow ground that no reasonable jury could find a causal link between the statutory violation and the accident. The court explained:
Here, there was no testimony or other evidence that a holder of a motorcycle endorsement, even if more experienced and knowledgeable than Jody Holz, would have been less likely to collide with Burlington Northern's tank car. Speed was not a significant factor. . . . Knowing the relevant facts, the jury concluded the accident was due almost entirely to Burlington Northern's failure to exercise due care at a time when visibility was crucial to a licensed or unlicensed rider alike.
58 Wash.App. at 710-11, 794 P.2d 1304 (footnote omitted). The court further observed that the railroad "[did] not point to any portion of the record or even argue that Jody Holz was less experienced or knowledgeable than a holder of a motorcycle endorsement." Id. at 710 n. 5, 794 P.2d 1304. "The evidence indicates that the problem was a lack of visibility, not any lack of skill, capability, or care that a fully licensed rider would have possessed or exercised but which Jody Holz did not." Id. at 712, 794 P.2d 1304.
¶ 49 In contrast to Holz, Mr. Lutz's skill, capability and care as a motorcycle operator were squarely at issue in this case. Contrary to the reasoning of the majority, the test under Holz is not whether a party "could have still been negligent even without the endorsement," (Majority at 1193) but whether the lack of an endorsement provided evidence of negligence making the accident more or less likely. Holz, 58 Wash.App. at 710-11, 794 P.2d 1304. The situation here is more analogous to White v. Peters, 52 Wash.2d 824, 329 P.2d 471 (1958), which the court in Holz recognized reflects the general rule that this is an issue of proximate cause to be decided by the jury. See Holz, 58 Wash.App. at 709-10, 794 P.2d 1304 (recognizing jury question in White because "the evidence supported an inference that the plaintiff's violation of the restriction was a proximate cause of the accident"); White, 52 Wash.2d at 828, 329 P.2d 471 (holding, "[w]hether his noncompliance is a proximate cause of the accident is a jury question in the circumstances of this case"). The majority erroneously reads Holz as providing a general rule of exclusion, as did the trial court. The result is that the jury in this case was deprived of probative evidence of negligence, *1198 and asked to render a verdict without the benefit of having all the facts.
¶ 50 I respectfully dissent.[2]
NOTES
[1] Mills v. Park, 67 Wash.2d 717, 719-20, 409 P.2d 646 (1966).
[2] Tuttle, 134 Wash.App. at 130-31, 138 P.3d 1107.
[3] Haynes v. Moore, 14 Wash.App. 668, 669, 545 P.2d 28 (1975).
[1] Whether the trial court properly excluded evidence of the citation and infraction presents a different issue. I agree with the majority that evidence of a citation is generally inadmissible opinion testimony. See Majority at 1193; Billington v. Schaal, 42 Wash.2d 878, 882, 259 P.2d 634 (1953). Evidence of an admitted infraction, while generally allowed as an admission against interest, may be excluded as cumulative when the opponent otherwise admits a statutory violation. Henry v. Leonardo Truck Lines, 24 Wash. App. 643, 644-45, 602 P.2d 1203 (1979). Accordingly, though the trial court erred in excluding all evidence of Mr. Lutz's statutory violation, it was within its discretion to limit the evidence and exclude the citation and admitted infraction.
[2] I have no quarrel with the majority's resolution of the other issues raised by Ms. Kappelman. I note, however, that the giving of the emergency instruction based on WPI 12.02, while not error in itself, compounded the court's error in not allowing Ms. Kappelman to present evidence of Mr. Lutz's statutory violation. A claim of emergency is appropriate in defense to a claim of negligence based on a statutory violation. WPI 60.01.01, Comment, at 479 (2002); see e.g., Wood v. Chicago, M., St. P. & P.R.R. Co., 45 Wash.2d 601, 608, 277 P.2d 345 (1954). Here, the jury heard only half of the story, as Mr. Lutz was allowed to advance his emergency theory but Ms. Kappelman was not allowed to offer opposing evidence of the statutory violation.